# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **JEFFREY L. SCOTT,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 04-3360-KHV** |
| **DAVID R. McKUNE, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Pursuant to 28 U.S.C. § 2254, Jeffrey L. Scott, *pro se*, seeks a writ of habeas corpus based on insufficient evidence, erroneous jury instructions, improper conduct by the trial judge, prosecutorial misconduct and ineffective trial counsel.  For reasons stated below, the Court overrules Scott's petition.

## I.    Procedural Background

On November 25, 1998, an assistant district attorney for Sedgwick County, Kansas charged Scott with first degree murder in violation of K.S.A. § 21-3401(a).  See Complaint/Information in No. 98CR2686.  The same day, Judge Clark V. Owens II appointed Jerome Jones to represent Scott in the criminal proceedings.  See Financial Affidavit in No. 98CR2686.  On March 16, 1999, a jury found Scott guilty as charged.  On May 19, 1999, the state district court sentenced Scott to life in prison.

Scott appealed his conviction to the Kansas Supreme Court.  The district court appointed the appellate defender to represent him on appeal.  See Order Appointing Counsel filed June 2, 1999 in No. 98CR2686.  On appeal, Scott argued that (1) the record contained insufficient evidence of premeditation; (2) the trial court improperly instructed the jury on the meaning of "premeditation;" (3) the trial court

violated his right to due process and committed reversible error by answering a jury question outside defendant's presence; (4) the prosecutor improperly injected his personal opinion and inflamed the jury's passions in closing argument; and (5) the trial court improperly instructed the jury regarding self defense and defense of another.  In addition to the brief which his attorney filed, Scott filed *pro se* a supplemental brief which asserted that the trial court had erred by allowing the State to introduce evidence regarding part of his pretrial statement without admitting the entire statement.

The Kansas Supreme Court affirmed defendant's conviction, finding that (1) sufficient evidence supported the verdict; (2) the jury instruction on premeditation was not clearly erroneous; (3) although defendant should have been present when the judge responded to the jury question, such error was harmless; (4) although the prosecutor made improper remarks in closing argument, they were not so gross and flagrant as to prejudice the jury and deny defendant a fair trial; (5) although the jury instruction regarding self defense was technically incorrect, the jury could not have reasonably been misled; and (6) the State fulfilled its duty to produce the entire pretrial statement before trial and Scott did not attempt to introduce the remaining portions of the statement at trial.  See State v. Scott, 271 Kan. 103, 21 P.3d 516 (2001).  The United States Supreme Court denied certiorari review.  See State v. Scott, 534 U.S. 1047 (2001).

On June 18, 2002, Scott filed *pro se* a motion for post-conviction relief under K.S.A. § 60-1507, asserting ineffective assistance of trial counsel.  See Scott v. State, Case No. 02C2069 in the District Court of Sedgwick County, Kansas.  Specifically, Scott asserted that trial counsel (1) failed to introduce exculpatory statements; (2) failed to establish a theory of self defense; (3) failed to know the law; and (4) denied defendant his right to testify.  On August 28, 2002, the district court appointed Michael C. Brown

2

to represent Scott in the post-conviction proceedings.  On October 8, 2002, Scott filed *pro se* a motion

for leave to amend his petition to assert a claim that the trial court had not held a proper hearing under

Jackson v. Denno, 378 U.S. 368 (1964), to determine whether he voluntarily gave his statement to police.

On October 10, 2002, the district court held a bench trial and denied Scott's claims.  On November 8,

Scott filed a notice of appeal to the Kansas Court of Appeals, which affirmed the denial of relief.  See Scott

v. State, No. 90,135, 88 P.3d 807 (Table), 2004 WL 944026 (Kan. App. April 30, 2004).  The Kansas

Supreme Court denied review.

On August 7, 2002, Scott filed a petition for writ of habeas corpus in this Court, asserting

essentially the same issues which he raised on direct appeal and in the post-conviction proceedings.  Scott

also complains that the state courts denied him an evidentiary hearing on his post-conviction claims.

**II.    Evidence At Trial**

On March 15 and 16, 1999, the state district court held a jury trial.  The prosecution called the

following witnesses: Maurice Mitchell, Eugene Jacobs, Gregory Burge, Dr. Deborah Johnson, Kelly Otis

and Dana Gouge.  Defendant called one witness, Forrest Davis.

Mitchell, a Wichita police officer, testified as follows: At 10:00 a.m. on January 5, 1998, he was

dispatched to check on Sheryl Chappell, who had not shown up for work.  Chappell's friends had gone

to check on her.  They saw someone lying on her living room floor and called police.  Mitchell entered the

residence and found Chappell, deceased, lying face-down on the living room floor.  Mitchell noticed blood

throughout the living room floor and on walls near her body.  The room showed obvious signs of a

disturbance, i.e. items knocked over, vases broken and pictures knocked down.

Jacobs, who was a crime scene investigator for Wichita police, testified as follows: Around 2:00

p.m. on January 5, 1998, he arrived at Chappell's home to investigate a possible homicide.  He took pictures of Chappell's house, living room and body.  He collected blood samples and other items around the house, dusted for fingerprints and took tape lifts to pick up trace evidence of hair samples, clothing material, etc. along the floor by the front door and around the body.  Jacobs found small drops of blood throughout the house, including the living room, bedrooms, bathroom and kitchen.  During Jacobs' testimony, the prosecutor showed photographs which included Chappell's body and pushed furniture and broken items in the living room.

Burge, another crime scene investigator for Wichita police, testified as follows: He attended Chappell's autopsy, which Dr. Deborah Johnson performed on January 6, 1998.  Because Chappell's death was suspicious, Burge photographed her body from beginning to end of the autopsy, which lasted about seven and a half hours.  During Burge's testimony, the prosecutor showed photographs which Burge had taken during the autopsy.  The photographs depicted a wound to the neck, damage to the lip area, different coloration to the skull area, fluid discoloration on her sweater, and a hyoid bone which the coroner had removed from the body.

Dr. Johnson, deputy coroner for Sedgwick County,[1] testified as follows: On January 5, 1998, she examined Chappell's body at the crime scene and assisted with its removal.  The next day, January 6, 1998, she performed an autopsy.  She closely examined the body and picked off a lot of fibers.  She also looked closely at each piece of clothing and examined the body for external injuries.  At the time of the autopsy, Chappell's body was starting to have early decomposition, probably because it was not covered

---

[1]        At the time of trial, Dr. Johnson had moved to Colorado, where she worked as a hospital pathologist and performed autopsies for various counties.

4

immediately after death.   Dr. Johnson concluded that the cause of death was manual strangulation associated with blunt force trauma to the head.   Dr. Johnson observed several signs of strangulation, including a broken hyoid bone and bruising inside the neck.   After being released from a strangle hold, it was possible that Chappell's body would have had some minor shaking or small movement, but it was not likely that she would have rolled from her back to her stomach.   Dr. Johnson opined that Chappell died lying face down in the position in which she was found.

Dr. Johnson observed multiple injuries caused by blunt force trauma, i.e. hitting against a fist or large surface area which did not cause laceration.   Based on Chappell's swollen lip, two black eyes and contusion on her nose and forehead, Dr. Johnson opined that sort of object or blunt force, likely a fist, hit Chappell in the face several times.   Tr. 78-79.   Dr. Johnson also found that blunt force trauma had caused injuries on the back of Chappell's skull.   Tr. 83.   She opined that significant blows caused the head injuries, i.e. her head was hit on the floor, on the wall or with fists, and that the injuries could have caused Chappell to lose consciousness.   Tr. 83-84, 86.   Dr. Johnson determined that blunt force trauma occurred before strangulation, and she could not state whether Chappell was conscious at the time of the strangulation.   Tr. 86-87.

Dr. Johnson observed an incised wound on the right side of Chappell's neck, roughly following the angle of her jaw, which could have been caused by a knife.   Tr. 87-89.   Because the wound was deeper toward the back, Dr. Johnson opined that it was inflicted from the front to the back.   Tr. 90.   At the deepest point, the cut was about 2 centimeters deep.   Tr. 91.   Because Dr. Johnson observed no significant bleeding associated with the wound either at the scene or inside the depth of the wound, she concluded that Chappell was already dead when she was cut.   Tr. 91-92.

5

Otis, a detective with the Wichita police, testified as follows: On November 9, 1998, defendant contacted him to give a statement regarding Chappell's death. Tr. 116. On November 23, 1998, Otis interviewed defendant, whose attorney was present. Id. During the interview, defendant told Otis the following information: Defendant used to live with Chappell. Tr. 117. On Saturday evening, January 3, 1998, he went to Chappell's home to retrieve personal belongings. Id. Defendant's current girlfriend Natalie (whom he subsequently married) went with him. Tr. 118. Chappell allowed defendant to enter the residence but became angry when she saw Natalie and yelled, "Why did you bring that bitch here?" Tr. 118-19. Chappell picked up a knife and charged Natalie, swinging the knife and cutting one of Natalie's fingers. Tr. 119. Defendant jumped over the couch and attempted to pull Chappell away from Natalie. Tr. 119. Defendant began wrestling Chappell, and she tried to stab him with the knife. Tr. 120. Defendant feared for Natalie's safety. He told her to leave and saw her go out the front door. Tr. 124-25. Defendant, who was standing behind Chappell, had one hand on her arm, trying to keep her from hurting him, and the other hand on her throat. Tr. 120-21. While Chappell was trying to stab him in a backward motion, she cut herself on the right side of her face or neck. Tr. 121. Defendant and Chappell had a violent struggle, bouncing off furniture, and Chappell hit her head on a table in the living room when they fell to the floor. They continued to struggle on the floor. Defendant used one hand to hold Chappell's arm with the knife. His other hand was on her throat when she became unconscious, lying face up on the living room floor. Tr. 122-23. Defendant saw Chappell move and believed that she was still alive. Tr. 124. Natalie stuck her head inside and asked if defendant was okay. Tr. 124. Defendant replied that Chappell was unconscious and that he thought she was drunk and had passed out. Tr. 124. He said that he wanted to get his stuff and leave. Tr. 124. After he and Natalie retrieved his belongings, defendant decided to

6

clean up blood in the kitchen and dining area which had fallen from the cut on Natalie's finger. Tr. 125-26. He found a mop in the kitchen and used it to mop up the blood before they left. Tr. 125-26. Defendant was not injured in the altercation. Tr. 126.

When asked about the position of Chappell's body, defendant said that he thought she was lying on her back, but he was not sure. Tr. 140. Otis told defendant that the coroner said that the cut on Chappell's neck was made post-mortem or right at the time of death. Tr. 128. Defendant adamantly denied it, stating that it occurred during the fight. Tr. 129. When Otis questioned how Chappell cut herself during the struggle, defendant admitted that he had inflicted the cut with his own knife while they were standing in the living room. Tr. 129-30. Defendant stated that his knife was clipped on a pocket and that he was able to retrieve it during the struggle to defend himself. Tr. 129. Defendant said that he had not mentioned his knife because he was afraid that it might show premeditation on his part. Tr. 130. Defendant stated that after he left Chappell's house, he wrapped her knife and his knife in a towel and threw it in a trash dumpster at the apartment complex where he and Natalie lived. Tr. 134.

Otis asked defendant whether he ever choked Chappell from behind. Defendant denied it. Tr. 131. Otis asked defendant how Chappell received injuries to her face and head. Tr. 132. Defendant replied that during the struggle, she fell and hit her head on a table, and that she might have hit her head on the arm rail of the couch and the floor. Tr. 132. Otis asked defendant about a hole in the wall. Tr. 133. Defendant asked whether it was the size of a head. Tr. 133. When Otis said yes, defendant said that Chappell had run into the wall. Tr. 133. Otis responded skeptically, and defendant stated that he had her arm and had swung her into the wall. Tr. 133.

Gouge, a detective with the Wichita police, testified as follows: On the afternoon of January 5,

7

1998, as part of the investigation into Chappell's death, he obtained blood and oral swabs from defendant. Tr. 143.  Gouge was in contact with defendant for about three to five minutes.  Tr. 144.  During that time, Gouge did not notice any cuts, lacerations or bruising to defendant's body.  Tr. 144.

Davis, chief of physical evidence at the regional forensic science center, testified as follows:  He examined evidence for body fluids, i.e. blood, semen, saliva or other materials, and conducted a DNA analysis.  Tr. 149.  Davis performed DNA analysis on ten blood samples which were collected from various places in Chappell's house.  Tr. 151.  Based on his preliminary results, Davis could exclude Chappell and defendant, but not Natalie, as donors of the blood.  Tr. 152.  Davis did  not conduct further reviews because the district attorney's office told him that it no longer needed the analysis.  Tr. 153.

During closing argument, the prosecutor argued that defendant cut Chappell's neck after she died either (1) to make sure she was dead, or (2) out of rage, as a last statement to Chappell.  Tr. 170.  He also argued that once Natalie left the house, defendant was no longer defending her.  Tr. 171-72.  He questioned why defendant could not have left the house as well, instead of continuing to fight with Chappell, and why, if defendant was defending himself, he suffered no cuts or bruises.  Tr. 171-72.  With regard to pictures of Chappell's body, the prosecutor stated as follows:

> Remember again, these are the hands of a human being that did this to another human being.  Don't get desensitized by just the grotesqueness of it, because almost all of you probably have never seen something like this before.  You look at it and just think can a human being do this?  Yeah, you have about eight feet separating you from the hands of a killer right here.

Tr. 172-73.  Defense counsel objected that the statement was inflammatory.  Tr. 173.  The court overruled the objection, stating that it was argument.  Tr. 173.

## III.     Legal Standards

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-32, 110 Stat. 1214, (codified in relevant part at 28 U.S.C. § 2254), governs the Court's review in this case.  See Paxton v. Ward, 199 F.3d 1197, 1204 (10th Cir. 1999) (AEDPA applies to habeas petitions filed after April 24, 1996, regardless of date of criminal trial forming basis of conviction).  Under Section 2254, as amended by the AEDPA, the Court may not issue a writ of habeas corpus with respect to any claim which the state court adjudicated on the merits unless that adjudication resulted in a decision:

> (1) . . . that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) . . . that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  Under the "contrary to" clause, the Court may issue a writ of habeas corpus only if (1) the state court arrived at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or (2) the state court decided the case differently than the Supreme Court on a set of materially indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  Under the "unreasonable application" clause, the Court may grant habeas relief if the state court "correctly identifie[d] the governing legal rule but applie[d] it unreasonably to the facts of a prisoner's case."  Id. at 407-08.  The Court may not issue a writ simply because it concludes, in its independent judgment, that the state court applied clearly established federal law erroneously or incorrectly; rather the application must be objectively unreasonable.  Id. at 409-11.

## IV.     Analysis

Defendant's habeas corpus petition lists seven grounds for relief: (1) the record contained

insufficient evidence of premeditation; (2) the trial court improperly instructed the jury on the meaning of premeditation; (3) the trial court violated his right to due process and committed reversible error by answering a jury question outside defendant's presence; (4) the prosecutor improperly injected his personal opinion and inflamed the jury's passions in closing argument; (5) the trial court incorrectly instructed the jury regarding self defense; (6) trial counsel was ineffective in (a) not requesting a hearing under <u>Jackson v. Denno</u>, 378 U.S. 368 (1964), to determine whether defendant's statement to police was voluntary, (b) not admitting into evidence his pretrial statement to police and (c) denying defendant the right to testify at trial;[2] and (7) the state court improperly denied him an evidentiary hearing on his ineffective assistance of counsel claims.  <u>See</u> <u>Petition</u> (Doc. #1) filed October 13, 2004.[3]  Defendant asks the Court for an evidentiary hearing on his claims.

In addition, defendant's memorandum in support of the petition argues that (1) the trial court should have instructed the jury on voluntary manslaughter based on imperfect self defense; (2) the trial court should have admitted into evidence defendant's statement to police; (3) the trial court should have held a <u>Denno</u> hearing to determine whether his statement to police was voluntary; (4) the trial court did not make findings of fact and conclusions of law pursuant to Kansas Supreme Court Rule 183(j); (5) the trial court ignored his motion to alter or amend judgment; and (6) cumulative error.  <u>See</u> <u>Memorandum In Support Of 28</u>

---

[2]       In his motion for evidentiary hearing, defendant also argues that trial counsel was ineffective in not presenting evidence to support a theory of self defense.  <u>See</u> <u>Motion For Evidentiary Hearing And Memorandum In Support</u> (Doc. #11) filed February 2, 2005 at 4, 17.  This argument appears to duplicate defendant's arguments that counsel should have admitted the pretrial statement and/or defendant's testimony, both of which are addressed elsewhere in this order.  Because defendant identifies no other evidence which counsel should have admitted, the Court does not address this argument separately.

[3]       Because defendant proceeds *pro se*, the Court liberally construes his filings.  <u>See</u> <u>Cummings v. Evans</u>, 161 F.3d 610, 613 (10th Cir. 1998).

U.S.C.A. 2254 Petition For Writ Of Habeas Corpus ("Memorandum In Support Of Habeas Petition")

(Doc. #2-1) filed October 13, 2004 at 16-18, 38-40, 49-55.

### A.    Sufficiency Of Evidence Regarding Premeditation

Defendant contends that the State presented insufficient evidence of premeditation.  On appeal, the

Kansas Supreme Court applied a standard which is similar to federal law: whether, viewed in the light most

favorable to the prosecution, a rational fact finder could have found defendant guilty beyond a reasonable

doubt.  See Scott, 271 Kan. at 107, 21 P.3d at 522 (citing State v. Graham, 247 Kan. 388, 398, 799

P.2d 1003, 1011 (1990)); see also Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2788-89

(1979) (evidence sufficient to support criminal conviction if viewing evidence in light most favorable to

prosecution, rational fact finder could have found essential elements of crime beyond reasonable doubt).

In applying this standard, the Kansas Supreme Court concluded that the following evidence supported the

jury's finding of premeditation: (1) continued application of pressure on Chappell's neck over a period of

time; (2) defendant's conduct after the crime, including mopping up blood, disposing of knives and waiting

11 months to talk to police; (3) the coroner's testimony that Chappell's neck was cut after she died; (4)

defendant's admission that he cut Chappell's neck after first claiming that she cut herself during the struggle;

and (5) defendant's continuous beating of Chappell.  See State v. Scott, 271 Kan. at 108-10, 21 P.3d at

522-23.  The decision of the Kansas Supreme Court constitutes a reasonable application of federal law.

Defendant is not entitled to relief on this ground.

### B.    Jury Instruction Regarding Premeditation

Defendant asserts that the trial court did not fully instruct the jury on the meaning of premeditation.

The trial court instructed the jury that to find defendant guilty of first degree murder, it must find that he

intentionally killed Chappell with premeditation.  See Jury Instructions, No. 7 filed March 17, 1999 in No. 98CR2686.  It further instructed that "premeditation" means "to have thought over the matter beforehand." Id., No. 12.  The Kansas Supreme Court reviewed the instruction under a clearly erroneous standard and concluded that the instruction accurately stated Kansas law.  See Scott, 271 Kan. at 111, 21 P.3d at 523-24.

Defendant contends that the instruction was incomplete because it did not fully define each element under Kansas law, such as planned, contrived and schemed beforehand.[4]  He also argues that the instruction improperly allowed the jury to find that he could have premeditated murder after the fight began. In essence, defendant argues that the instruction inaccurately stated Kansas law.  On habeas review, the Court does not re-examine state court determinations regarding state law.  See Estelle v. McGuire, 502 U.S. 62, 68 (1991).  The fact that an instruction was allegedly incorrect under state law is not a basis for habeas relief.  Id. at 71-72 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).  The Court can set aside a state conviction based on an erroneous instruction only when the "ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  Id. at 72; see also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) (to overturn state conviction petitioner must establish not merely that instruction is undesirable, erroneous or even "universally condemned," but that it violated constitutional right).  In reviewing the instruction, the Court considers the instruction in the context of the trial record and

_____

[4]       Defendant also cites Black's Law Dictionary, which he contends defines premeditation as follows:

The act of meditating in advance; deliberation upon a contemplated act; plotting or contriving; a design formed to do something before it is done. Decision or plan to commit a crime, such as murder, before committing it.  A prior determination to do an act.

Memorandum In Support Of Habeas Petition (Doc. #2-1) at 15.

the instructions as a whole. <u>Cupp</u>, 414 U.S. at 147.   As discussed above, the Kansas Supreme Court

reasonably found that viewed in the light most favorable to the prosecution, the evidence supported a

conviction for first degree murder.  <u>See</u> <u>Scott</u>, 271 Kan. at 108-10, 21 P.3d at 522-23.  On this record,

the allegedly erroneous instruction did not so infect the entire trial as to deprive defendant of his due process

rights.  <u>See</u> <u>Estelle</u>, 502 U.S. at 72.  Defendant is not entitled to habeas relief on this ground.

### C.   Ex Parte Communication Between Trial Judge And Jury

Defendant complains that the trial judge improperly answered a jury question outside his presence

and that of defense counsel.  When the jury returned its verdict, the trial judge informed the parties that

about 40 minutes earlier, the jury had sent out a question regarding Instruction No. 12 – which he answered

without informing counsel.  <u>See</u> Trial Transcript at 186:1-10.  Instruction No. 12 provided as follows:

> Premeditation means to have thought the matter over beforehand.
> Intentionally means conduct that is purposeful and willful and not accidental.
> Intentional includes the terms "knowing," "willful," purposeful" and "on purpose."
> Heat of passion means any intense or vehement emotional excitement which was
> spontaneously provoked from circumstances.  Such emotional mind must be of such
> degree as would cause an ordinary person to act on impulse without reflection.

<u>Jury Instructions</u>, No. 12, filed March 17, 1999 in No. 98CR2686.   The jury had asked whether all of

Instruction 12 pertained to premeditation.  <u>See</u> Question filed March 17, 1999 in No. 98CR2686.  The

judge responded in writing as follows: "This instruction defines terms used throughout the instructions." <u>Id.</u>

Defendant argues that by communicating with the jury outside his presence, the judge violated his

right to due process.  The Kansas Supreme Court found that a criminal defendant has a constitutional and

statutory right to be present at all critical stages of trial, including a conference between the trial judge and

jury, and that the trial judge's conduct violated such rights.  <u>See</u> <u>Scott</u>, 271 Kan. at 112, 21 P.3d at 524.

13

It concluded, however, that the error was harmless beyond a reasonable doubt.  Id. at 112, 21 P.3d at

524-25.  Specifically, the Kansas Supreme Court found as follows:

> The judge's response to the jury question about Instruction No. 12 was correct and
> completely innocuous.  There was no harm in the judge's response.  Although the judge
> should have responded to the jury question in the presence of Scott, or obtained a waiver
> from him, we conclude beyond a reasonable doubt that the error had little, if any,
> likelihood of having changed the result of trial.

Id. at 112-13, 21 P.3d at 525.  The Kansas Supreme Court applied the correct standard under federal

law, and its application of the standard was reasonable.  See United States v. Gomez, 67 F.3d 1515, 1528

(10th Cir. 1995) (even though trial court violated defendant's right to be present when it responded to jury

question, conviction will be upheld if error was harmless beyond reasonable doubt).  Defendant is not

entitled to habeas relief on this ground.

### D.    Improper Remarks By Prosecutor

Defendant seeks habeas relief based on the prosecutor's closing argument that eight feet separated

the jury from the "hands of a killer."  Tr. 173.  During closing argument, while referring to pictures of

Chappell's dead body, the prosecutor stated as follows:

> Remember again, these are the hands of a human being that did this to another human
> being.  Don't get desensitized by just the grotesqueness of it, because almost all of you
> probably have never seen something like ths before.  You look at it and just think can a
> human being do this?  *Yeah, you have about eight feet separating you from the hands
> of a killer right here.*

Tr. 172-73 (emphasis added).  Defense counsel objected that the statement was inflammatory.  Tr. 173.

The court overruled the objection, stating that "[t]his is argument."  Tr. 173.

On direct appeal, the Kansas Supreme Court found that calling defendant a "killer" was improper

in that it was inflammatory and went outside the scope of evidence upon which the prosecutor was allowed

14

to comment. See Scott, 271 Kan. at 114, 21 P.3d at 526. It nevertheless concluded that the comment was not so gross and flagrant as to have prejudiced the jury against defendant and deny him a fair trial. See id. at 115, 21 P.3d at 526. Specifically, the Kansas Supreme Court found that the comment did not rise to the level of misconduct present in State v. Pabst, 268 Kan. 501, 996 P.2d 321 (2000), where the prosecutor had called the defendant a "liar" eleven times during closing argument, and that no evidence suggested ill will by the prosecutor. Scott, 271 Kan. at 115, 21 P.3d at 526. The Kansas Supreme Court applied the correct standard under federal law, and its determination was not unreasonable. See Donnelly, 416 U.S. at 643 (prosecutor's improper remarks require reversal of state conviction only if remarks so infected trial as to make resulting conviction a denial of due process); Le v. Mullin, 311 F.3d 1002, 1013 (10th Cir. 2002).

Defendant also argues that during closing argument, the prosecutor referred to facts not in evidence. Specifically, defendant asserts that the prosecutor stated that he had cut the victim's neck after she died, when no evidence supported such conclusion. Defendant did not raise this issue in state court. Because defendant has not exhausted state court remedies on this claim, see Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991), he cannot obtain federal habeas corpus review unless he can demonstrate cause for the default and actual prejudice, or that failure to consider the claims will result in a fundamental miscarriage of justice. Id. at 750. Defendant has not shown cause for default or actual innocence. See Phillips v. Ferguson, 182 F.3d 769, 774 (10th Cir. 1999) (miscarriage of justice exception extremely narrow and arises only where constitutional violation has probably resulted in conviction of one who is actually innocent). The Court therefore denies habeas relief on this ground.

E.    **Incorrect Jury Instruction Regarding Self Defense**

Defendant contends that the trial court incorrectly instructed the jury regarding self defense.

Instruction No. 14 stated as follows:

> The defendant has claimed his conduct was justified as self-defense and the defense of another person.
> A person is justified in the use of force against an aggressor when and to the extent it appears to him and he reasonably believes that such conduct is necessary to defend himself *and another* against such aggressor's imminent use of unlawful force.  Such justification requires both a belief on the part of defendant and the existence of facts that would persuade a reasonable person to that belief.

Jury Instructions filed March 17, 1999 in No. 98CR2686 (emphasis added).

Defendant asserts that the jury instruction improperly raised his burden of proof on self defense, requiring him to prove that he acted to defend both himself and Natalie.  Because defendant did not object at trial, the Kansas Supreme Court applied a clearly erroneous standard, i.e. whether the reviewing court was firmly convinced that a real possibility exists that the jury would have rendered a different verdict if the error had not occurred.  See Scott, 271 Kan. at 115-16, 21 P.3d at 526.  The Kansas Supreme Court found that the instruction was "technically incorrect" in that it required defendant to prove that he was acting to defend himself *and* Natalie, instead of defending himself *or* Natalie.  Id. at 117, 21 P.3d at 527.   It found no real possibility, however, that the jury would have rendered a different verdict if the instruction had used the word "or" instead of "and."  Specifically, the Kansas Supreme Court found as follows:

> The jury was aware that Scott claimed he was defending [Natalie] when Chappell came at her with a knife.  The jury was aware that [Natalie] left the house and was not present or in danger when the fight continued.  It was clear that Scott claimed he was merely defending himself after [Natalie] was told to exit the house.  The jury, having sat through the opening arguments, could not have reasonably been misled by the instruction even though the instruction was erroneous.

16

Id.

The Kansas Supreme Court applied a standard similar to federal law, i.e. whether the erroneous instruction by itself so infected the entire trial that the resulting conviction violates due process. See Estelle, 502 U.S. at 72. Considering the instruction in the context of the instructions as a whole and the trial record, see Cupp, 414 U.S. at 147, its conclusion was not unreasonable. In addition to first degree murder, the trial court instructed the jury on the following lesser offenses: (1) second degree murder based on intentional conduct not upon sudden quarrel or in the heat of passion; (2) voluntary manslaughter based on intentional conduct upon sudden quarrel or in the heat of passion; and (3) involuntary manslaughter based on unintentional conduct and self defense in an unlawful manner or excessive use of force. See Jury Instructions, Nos. 7-11, filed March 17, 1999 in No. 98CR2686. Despite these options, the jury concluded that defendant premeditated Chappell's murder. They obviously did not believe that defendant was acting in defense of himself or Natalie. The erroneous instruction did not affect the outcome of trial. Defendant was not deprived of his rights to due process.

### F.    Ineffective Assistance Of Counsel

Defendant contends that trial counsel was ineffective in (1) not requesting a Denno hearing; (2) not admitting into evidence his pretrial statement to police; and (3) denying him the right to testify. A claim of ineffective assistance of counsel, in violation of the Sixth Amendment, is governed by Strickland v. Washington, 466 U.S. 668 (1984). See Williams, 529 U.S. at 390-91 (Strickland qualifies as clearly established federal law under AEDPA even though test, by necessity, requires case-by-case examination of evidence); see also Upchurch v. Bruce, 333 F.3d 1158, 1162-1164 (10th Cir. 2003). To show ineffective assistance of counsel under Strickland, defendant must satisfy two prongs:

17

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland, 466 U.S. at 687. To establish the first element – deficient performance – defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. at 688. To establish the second element – prejudice – defendant must show a reasonable probability that but for the errors of counsel, the result of the proceeding would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

### 1.    Failure To Request A Denno Hearing

Defendant asserts that trial counsel was ineffective in failing to request a hearing under Jackson v. Denno, 378 U.S. 368 (1964), to determine whether his statement to police was voluntary. In Denno, the United States Supreme Court ruled unconstitutional New York procedure which required the jury to determine whether a confession was voluntary at the same time it determined defendant's guilt or innocence. In so doing, the United States Supreme Court found that where voluntariness of a confession is questioned, defendant has a constitutional right "to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession." Id. at 376.

In ruling on defendant's motion for post-conviction relief, the state district court concluded that counsel was not deficient in failing to request a Denno hearing. See Order Denying Movant's Pro Se

18

K.S.A. 60-1507 Motion filed November 13, 2002, in No. 02 C 2069.[5]  In so finding, the district court noted that defendant had asked to meet with police and that at trial he presented a theory of self defense based entirely on evidence of his account of events as found in the taped interview.  Id. at 6-7.  The district court further found that even if counsel was deficient in failing to challenge the voluntariness of the statement, defendant was not prejudiced because it was very likely that after a Denno hearing, the trial court would have admitted evidence regarding the statement.  Id. at 7.  On appeal, the Kansas Court of Appeals stated that appellate counsel conceded that the Denno issue was waived.  See Scott, 2004 WL 944026, at *2.  The Kansas Court of Appeals further found that defendant had not shown any facts which would have likely resulted in suppression of the statements – especially since he sought out the police and took counsel with him to make the statement.  Id.

The record does not clearly reveal the grounds on which the Kansas Court of Appeals found that the Denno issue was waived.  It stated that defendant's position – that a Denno hearing should have been held for the audiotape – was "somewhat inconsistent" with defendant's position that trial counsel was ineffective for not admitting the same tape.  Id.  It did not, however, identify that as the reason for the waiver.  Because the Court cannot determine whether the Kansas Court of Appeals applied the proper standard in deciding that defendant had waived the issue, it will address the merits of defendant's argument.

The state district court applied the correct standard under federal law.  Under the first Strickland prong, it concluded that defense counsel was not deficient in failing to request a Denno hearing.  This conclusion is reasonable in light of the facts: Defendant initiated contact with the police, took his attorney

---

[5]        Although the order states that movant was *pro se*, he actually was represented by counsel.

to the interview with him, and wanted to use portions of his statement to prove his theory of self defense. Under the second <u>Strickland</u> prong, the district court concluded that requesting a <u>Denno</u> hearing would not have changed the outcome of the proceedings. Again, this conclusion is reasonable. Defendant has cited no evidence that the statement was involuntary. He is not entitled to habeas relief on this ground.

### 2.    Failure To Admit Statement

Defendant contends that trial counsel was ineffective in not admitting into evidence his statement to police.[6] His argument is twofold. One, that counsel was ineffective in not presenting the statement to the jury; and two, that in not admitting the statement, counsel denied him the right to testify. The Court addresses the latter argument in the next section.

With respect to defendant's claim that counsel was ineffective in not admitting the tape into evidence, the state district court articulated the correct standard under federal law. <u>See</u> <u>Order Denying Movant's Pro Se K.S.A. 60-1507 Motion</u> filed November 13, 2002, in No. 02 C 2069 at 2. It found that counsel's performance was not deficient because in the taped interview, defendant made numerous contradictory and inculpatory statements which would open the door for the State to attack his credibility. <u>Id.</u> at 3. The Kansas Court of Appeals affirmed, noting that it was doubtful that the jury would have reached a different verdict had the tape been played. <u>Scott</u>, 2004 WL 944026, at *3.

The state courts reasonably applied the correct legal standard. During the taped interview,

---

[6]    The parties do not discuss whether defendant could have admitted his own statement under Kansas law. The State's brief and the state court opinions apparently assume that the tape would have been admissible had defense counsel offered them into evidence. <u>See</u> <u>Answer And Return</u> (Doc. #18) filed May 13, 2005 at 19. The Court assumes for purposes of this analysis that the statement would have been admissible. <u>See, e.g.,</u> <u>State v. Moncla</u>, 262 Kan. 58, 69, 936 P.2d 727, 736 (1997) (discussing admission of taped witness interview with police), <u>rev'd on other grounds</u>, 269 Kan. 61 (Kan. 2000).

defendant made contradictory statements regarding how Chappell received the cut on her neck.  In addition, as the state district court noted, questions by the interviewer indicate that Natalie's version of events differs markedly from defendant's.  Moreover, as the Court of Appeals noted, the statements which defendant contends would have supported his self defense theory – that Chappell's father had taught her about weapons and that she had a temper and had previously used a baseball bat on a guy – arguably do not justify the use of deadly force against her.  See id.  The record supports the state court determination that counsel's decision was not unreasonable.  Defendant is not entitled to federal habeas relief on this ground.

### 3.     Denial Of Right To Testify

Defendant contends that trial counsel was ineffective in denying him the right to testify at trial.  Specifically, defendant asserts that (1) counsel agreed to play his statement to police to the jury in lieu of having him testify at trial and then did not play the statement; and (2) counsel erroneously told him that if he took the witness stand, the prosecutor could inquire into his prior conviction and parole status.  Defendant contends that he would have testified at trial if he had known that counsel would not play the tape and/or if he had known correct information regarding the State's right to inquire into his criminal history.  See Memorandum In Support Of 28 U.S.C.A. 2254 Petition For Writ Of Habeas Corpus (Doc. #2-1) at 50.

A criminal defendant has a constitutional right to testify in his own behalf at trial.  Rock v. Ark., 483 U.S. 44, 49- 52 (1987).  The decision to testify lies squarely with defendant; it is not counsel's decision to make.  Jones v. Barnes, 463 U.S. 745, 751 (1983).  Defense counsel should inform defendant that he has the right to testify and that the decision whether to testify belongs solely to him.  See United States v.

21

Teague, 953 F.2d 1525, 1533-34 (11th Cir. 1992). Counsel should also discuss the strategic implications of choosing whether to testify, and should make a recommendation to defendant. See id. Yet counsel lacks authority to prevent defendant from testifying in his own defense, even when doing so is suicidal trial strategy. See United States v. Janoe, 720 F.2d 1156, 1161 & n.10 (10th Cir. 1983).

In deciding defendant's motion for post-conviction relief, the state district court purported to make factual findings regarding the merit of defendant's claim that counsel denied him the right to testify. Specifically, it found that (1) defense counsel "likely" informed defendant that if he brought his credibility into issue the State could impeach him with evidence of prior crimes and/or parole status; (2) counsel did not prevent defendant from testifying; (3) defendant had the opportunity to discuss the issue with his attorney; and (4) defendant made the decision to not testify. See Order Denying Movant's Pro Se K.S.A. 60-1507 Motion filed November 13, 2002 in No. 02 C 2069 at 4-5.[7] The state district court did not hold an evidentiary hearing and the record contains no basis for its factual findings. The Court therefore finds that the findings are unreasonable and not subject to deferential review. See 28 U.S.C. § 2254(d)(2); Taylor v. Maddox, 366 F.3d 992, 999-1000 (9th Cir.) (unreasonable fact determination where appellate panel could not reasonably conclude finding supported by record), cert. denied 125 S. Ct. 809 (2004).

Defendant contends that trial counsel denied him the right to testify by breaching his agreement to play the statement instead of having defendant testify at trial. As discussed above, counsel's decision to not play the tape was reasonable trial strategy. In light of defendant's allegation that he would have testified

---

[7]     On appeal, the Kansas Court of Appeals did not specifically address defendant's arguments that counsel denied him the right to testify; it generally affirmed, finding that under the circumstances, not having defendant testify was within the wide range of professionally competent assistance. See Scott, 2004 WL 944026, at *3.

if he had known that counsel would not play the tape, however, the Court must decide whether the decision

resulted in ineffective assistance under Strickland.  Federal courts generally recognize that defendant waives

the right to testify if he does not affirmatively attempt to take the witness stand during trial.  See United

States v. Asamoah, No. 97-2890, 1999 WL 529526, at *1 (1st Cir. 1999); United States v. Martinez,

883 F.2d 750, 761 (9th Cir. 1989) vacated on other grounds, 928 F.2d 1470 (9th Cir. 1991); United

States v. Bernloehr, 833 F.2d 749, 751-52 (8th Cir. 1987).  Because defendant did not affirmatively

attempt to do so, or object when counsel rested without playing the tape or having him testify, he cannot

now claim that counsel denied him the right to testify.

Defendant claims that he decided not to testify based on counsel's incorrect legal advice.

Specifically, defendant claims that counsel incorrectly told him that if he testified at trial, the prosecutor

could inquire into his past criminal convictions and parole status.  Kansas law provides that if a criminal

defendant testifies, "no evidence of his or her conviction of a crime shall be admissible for the sole purpose

of impairing his or her credibility unless the witness has first introduced evidence admissible solely for the

purpose of supporting his or her credibility."  K.S.A. § 60-421.[8]  Thus, if defendant had testified at trial,

the prosecution would not have been able to ask about prior convictions unless defendant first put his

character in issue.  See State v. Lewis, 27 Kan. App.2d 380, 384-85, 5 P.3d 531, 534-35 (Kan. App.

---

[8]        Section 60-421 provides as follows:
Evidence of the conviction of a witness for a crime not involving dishonesty or false
statement shall be inadmissible for the purpose of impairing his or credibility.  If the witness
be the accused in a criminal proceeding, no evidence of his or her conviction of a crime
shall be admissible for the sole purpose of impairing his or credibility unless the witness has
first introduced evidence admissible solely for the purpose of supporting his or her
credibility.
K.S.A. § 60-421.

2000).  To the extent counsel advised otherwise, his performance was objectionably unreasonable under the first prong of <u>Strickland</u>.

To meet the second prong of <u>Strickland</u>, defendant must show prejudice, <u>i.e.</u> a reasonable probability that but for counsel's error, the result of the proceeding would have been different.  Defendant fails to make such a showing.  He alleges no facts regarding what he would have said had he taken the stand, or how his testimony would have changed the jury's mind.  Presumably he would have repeated statements contained in his statement to police, <u>i.e.</u> that Chappell's father taught her about weapons and that she had a temper and had used a baseball bat on a guy before.  As the Kansas Court of Appeals noted, such facts would not support the use of deadly force against her.  <u>Scott</u>, 2004 WL 944026, at *3. Defendant has not shown with reasonable probability that had he testified, the result of the proceedings would have been different.  He is not entitled to federal habeas relief on this ground.

### G.    State Court's Failure To Hold Evidentiary Hearing

Defendant argues that the state court denied him due process by not holding an evidentiary hearing on his ineffective assistance claims.  Under Kansas law, an individual seeking post-conviction relief is not entitled to a hearing if the "motion and the files and records of the case conclusively show that the movant is entitled to no relief."  K.S.A. § 60-1507(b).  The decision to hold an evidentiary hearing is within the discretion of the state trial court.  <u>Estes v. State</u>, 221 Kan. 412, 414, 559 P.2d 392 (1977).  Habeas corpus relief is not available "to correct errors of state law or to disturb discretionary decisions of the state courts."  <u>Gourley v. McKune</u>, 44 F. Supp.2d 1158, 1168 (D. Kan. 1999).

### H.    Jury Instruction On Voluntary Manslaughter

Defendant asserts that the trial court should have instructed the jury on voluntary manslaughter

24

based on an honest but unreasonable belief that use of deadly force was justified.[9]   See Memorandum In Support Of Habeas Petition (Doc. #2-1) at 18-19.   Defendant did not raise this issue in state court. Because defendant has not exhausted state court remedies on this claim, see Coleman, 501 U.S. at 735 n.1, he cannot obtain federal habeas corpus review unless he can demonstrate cause for the default and actual prejudice, or that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750.   Defendant asserts cause for the default based on intervening case law. Specifically, he asserts that he could not have raised the issue earlier because his argument is based on State v. Jones, 27 Kan. App.2d 910, 8 P.3d 1282 (Kan. App. 2000), which was decided on August 11, 2000, the day on which he filed his brief in the Kansas Supreme Court.   He asserts that he attempted to raise the issue in a petition for rehearing, which the Kansas Supreme Court denied.   Defendant does not state why he did not raise the issue in the Section 1507 motion which he filed in 2002.   On this record, defendant has not shown cause for default.   See Coleman, 501 U.S. at 753.   He is not entitled to relief on this ground.

### I.     Trial Court's Failure To Admit Entire Pretrial Statement

Defendant asserts that the trial court should not have admitted evidence regarding part of his pretrial statement to police without admitting the entire statement.   On direct appeal, the Kansas Supreme Court found no merit in this issue because defendant did not attempt to introduce the statement at trial. Defendant cites no federal law which imposes an independent duty on the prosecutor or trial court to admit such

---

[9]     Defendant's argument ignores the fact that Instruction No. 11 instructed the jury on involuntary manslaughter based on self defense in an unlawful manner or excessive use of force.   See Jury Instructions, No. 11, filed March 17, 1999 in No. 98CR2686.

evidence, and the Court is aware of none.  Defendant is not entitled to relief on this ground.

###### J.        Trial Court's Failure To Hold <u>Denno</u> Hearing

Defendant contends that the trial court should have held a <u>Denno</u> hearing to determine whether his statement to police was voluntary.  The Kansas Court of Appeals found that defendant had waived this issue.  <u>See</u> <u>Scott</u>, 2004 WL 944026, at *2.  Because the Court cannot determine the basis for such waiver, it will review the merits of defendant's argument.  Under <u>Denno</u>, where a question has been raised regarding the voluntariness of a confession, the trial court must have a fair hearing and reliable determination on the issue.  <u>See</u> <u>Denno</u>, 378 U.S. at 374-77.  Here, defendant points to no facts which put the voluntariness of his statement in issue in the trial court.  Absent such facts, the trial court was not required to hold a hearing.  Defendant is not entitled to relief on this ground.

###### K.        Trial Court's Failure To Make Findings Of Fact And Conclusions Of Law

Defendant contends that in ruling on his motion for post-conviction relief, the state district court failed to make findings of fact and conclusions of law as required by Kansas Supreme Court 183(j).  This Court cannot grant federal habeas relief for errors of state law.  <u>See</u> <u>Estelle</u>, 502 U.S. at 67-68 (quoting <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990)).  Defendant is not entitled to relief on this ground.

###### L.        Trial Court's Failure To Rule On Motion To Alter Or Amend Judgment

Defendant argues that the trial court denied him due process by not ruling on his motion to alter or amend judgment.  Defendant did not raise this issue in state court proceedings, and he has not shown cause for the default or actual innocence.  <u>See</u> <u>Coleman</u>, 501 U.S. at 750; <u>Phillips</u>, 182 F.3d at 774.  He is not entitled to federal habeas relief on this ground.

**M.    Cumulative Error**

Defendant seeks relief based on cumulative error.  He did not raise this issue in state court proceedings and therefore has procedurally defaulted on such claim.  See Sillick v. Ault, 358 F. Supp.2d 738, 778 n.15 (N.D. Iowa 2005); Nguyen v. Runnels, No. CO3-0689CRB, 2003 WL 22939239, at *13 (N.D. Cal. Dec. 5, 2003); Arroyo v. Greiner, No. 00 Civ. 2301, 2002 WL 1685007, at *2 (S.D.N.Y. June 23, 2002).  Defendant has not shown cause for the default or actual innocence, see Coleman, 501 U.S. at 750; Phillips, 182 F.3d at 774, and he is not entitled to federal habeas relief on this ground.

Moreover, even if the Court addressed the claim on the merits, it would not grant relief.  Cumulative error analysis is an extension of harmless error analysis.  See Darks v. Mullin, 327 F.3d 1001, 1018 (10th Cir. 2003).  On habeas review, the Court evaluates whether cumulative errors "had substantial and injurious effect or influence in determining the jury's verdict." Id. (quoting Brecht v. Abrahamson, 507 U.S. 619, 629-33 (1993)).  Defendant has shown three errors at trial: (1) the trial court improperly communicated to the jury outside his presence; (2) the prosecutor improperly told the jury that "you have about eight feet separating you from the hands of a killer;" and (3) Instruction No. 14 stated that to prove self defense, defendant had to believe that his conduct was necessary to defend himself and another.  In light of evidence presented at trial, the cumulative effect of such errors did not substantially influence the jury verdict.

**N.    Request For Evidentiary Hearing**

Defendant asks this Court to hold an evidentiary hearing on his claims.  Under 28 U.S.C. § 2254(e)(2), if an applicant has failed to develop the factual basis of a claim in state court proceedings, the Court shall not hold an evidentiary hearing unless the applicant shows that

27

(A) the new claim relies on –
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).  Under this provision, a threshold question is whether the applicant failed to develop a factual basis of his claims in the state court proceedings.  "[A] failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or prisoner's counsel."  Le, 311 F.3d at 1012 (quoting Williams v. Taylor, 529 U.S. 420, 532 (2000)).  If the applicant did not fail to develop a factual basis for his claims in state court, he is entitled to an evidentiary hearing if his allegations, if true and not contravened by the record, would entitle him to habeas relief.  Le, 311 F.3d at 1012 (citing Mayes v. Gibson, 210 F.3d 1284, 1287 (10th Cir. 2000).

In this case, the Court need not decide whether defendant has failed to develop a factual basis for his claims in state court.  As discussed above, even if his allegations are true, he is not entitled to habeas relief.

**IT IS THEREFORE ORDERED** that the petition for habeas corpus pursuant to 28 U.S.C. § 2254 be and hereby is **DENIED.**

Dated this 13th day of October, 2005 at Kansas City, Kansas.

> s/ Kathryn H.  Vratil
> Kathryn H. Vratil
> United States District Judge

28